# UNITED STATES BANKRUPTCY COURT
## DISTRICT OF PUERTO RICO

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
                     :

**In re**                      :         **Chapter 11**
                     :

**DF Servicing LLC,**         :         **Case No. 15-10253 (ESL)**
                     :

        **Debtor.**         :
                     :
                     :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

## URGENT MOTION OF SECURED LENDER
## TO PROHIBIT OR CONDITION USE OF CASH COLLATERAL

Bautista Cayman Asset Company, as the prepetition secured lender (the "Secured Lender") to DF Investments LLC, DF Holdings LLC, DF Tier I LLC, and DF Servicing LLC (collectively, the "Debtors"), hereby submits this motion (the "Motion") for an order, substantially in the form attached as Exhibit A hereto (the "Proposed Order"), (i) prohibiting the Debtors' use of cash collateral until the Debtors provide adequate protection against the diminution in value of the Secured Lender's cash collateral in accordance with sections 361 and 363 of the title 11 of the United States Code (the "Bankruptcy Code"), including segregation and an accounting of cash collateral as required by 11 U.S.C. § 363(c)(3) and compliance with a detailed 13-week cash flow budget, and (ii) conditioning the Debtors' continued use of cash collateral on such adequate protection. In further support of this Motion, the Secured Lender respectfully represents and sets forth as follows:

### JURISDICTION

1. The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2). Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409. The statutory predicates for the relief requested herein

54545007_1

are sections 105(a), 361, and 363 of the Bankruptcy Code and Rule 4001(a) of the Federal Rules

of Bankruptcy Procedure.

## BACKGROUND

2.      On December 24, 2015, the Debtors filed voluntary petitions with this Court for

relief under chapter 11 of the Bankruptcy Code.  The Debtors have continued to operate and

manage their businesses as debtors in possession pursuant to sections 1107(a) and 1108 of the

Bankruptcy Code.  No trustee or examiner has been appointed in the Debtors' bankruptcy cases.

### A.      THE CREDIT AGREEMENT AND SECURITY DOCUMENTS

3.      On July 28, 2010, DF Investments LLC ("DFI") entered into a certain Credit

Agreement (as amended, supplemented, or otherwise modified, the "Credit Agreement"),[1] by

and among DFI, as borrower; DF Holdings LLC ("Holdings"), DF Servicing LLC ("Servicing"),

and DF Properties LLC ("Properties"),[2] as the other borrower parties; and Doral Bank ("Doral"),

as lender.  Under the Credit Agreement, Doral provided DFI with approximately $101 million in

term loans and, subject to certain conditions, agreed to provide an additional $28 million in

construction financing loans (collectively, the "Loans").  Under the Credit Agreement, interest

payments are due on July 28th of each year, without defense based on set-off, recoupment, or

counterclaim. Exhibit B § 1.8.

4.      Pursuant to certain guarantee agreements, each dated July 28, 2010 (collectively,

the "Guarantees"),[3] Holdings, Servicing, and Properties unconditionally guaranteed the payment

---

[1]      A copy of the Credit Agreement is attached as Exhibit B hereto.

[2]      Properties has not filed for bankruptcy.  According to DFI's audited financial statements for the fiscal year
ending December 31, 2013 (the "2013 Audited Financials"), Properties has been dissolved and all of its assets were
transferred to DFI.  Attached as Exhibit C hereto is a copy of the 2013 Audited Financials.

[3]      Attached as Exhibits D-1 and D-2 hereto are copies of (1) the Parent Guaranty Agreement, dated July 28, 2010,
by Holdings in favor of Doral, and (2) the Subsidiary Guaranty Agreement, dated July 28, 2010, by Servicing and

and performance of all obligations under the Credit Agreement.

5.    Pursuant to certain pledge and security agreements, each dated July 28, 2010 (collectively, the "Security Agreements"),[4] the Debtors pledged the following collateral as security for the obligations under the Credit Agreement: (i) all equity interests in the Debtors (other than Holdings) and DF Class B LLC; (ii) a deposit account maintained by DFI at Wells Fargo Bank, National Association (the "Deposit Account"); (iii) interests in commercial mortgage loans secured by certain real properties located in Puerto Rico; (iv) equipment, leases, licenses, contract rights, trade names, permits, and other personal property with respect to certain real properties located in Puerto Rico; and (v) all proceeds of the foregoing (collectively, the "Collateral"). The security interests in the Collateral were properly perfected through the filing of Uniform Commercial Code ("UCC") financing statements against the Debtors in their respective jurisdictions of organization,[5] and with respect to the Deposit Account, entry into a Deposit Account Control Agreement, dated September 26, 2013. The Debtors' own audited financial statements for their 2013 fiscal year describe the Loans as secured claims.

**B.    SALE OF THE LOANS TO THE SECURED LENDER**

6.    In February 2015, Doral failed and the Federal Deposit Insurance Corporation (the "FDIC") became its receiver. In March 2015, the FDIC sold the Loans to the Secured

---

Properties in favor of Doral.

[4]    Attached as Exhibits E-1, E-2, E-3, E-4, E-5, and E-6 hereto are copies of the (1) Pledge and Security Agreement, dated July 28, 2010, by Holdings in favor of Doral, (2) Pledge and Security Agreement, dated July 28, 2010, by Tier I in favor of Doral, (3) Pledge and Security Agreement, dated July 28, 2010, by DFI in favor of Doral, (4) Subsidiary Pledge Agreement, dated July 28, 2010, by Servicing and Properties in favor of Doral, (5) the Deposit Account Control Agreement, dated September 26, 2013, by and among DFI, Doral, and Wells Fargo Bank, National Association, and (6) the UCC filings.

[5]    Holdings and Tier I are organized in Delaware and DFI and Servicing are organized in Puerto Rico. The Secured Lender filed UCC Filings (i) in Delaware against Holdings, Tier I, and DFI, and (ii) in Puerto Rico against all Debtors.

54545007_1

Lender, and the Secured Lender succeeded to all of Doral's rights and obligations under the

Credit Agreement and the related guarantee and security agreements.

**C.      DFI'S REFUSAL TO PROVIDE FINANCIAL INFORMATION**

7.      On June 8, 2015, in accordance with the Credit Agreement, the Secured Lender

requested that DFI provide (i) its annual financial statements for the fiscal year ending December

31, 2014 and its quarterly financial statements for the quarters ending June 30, 2014, through

March 31, 2015; and (ii) access to the Debtors' books and records.  DFI has not complied with

its contractual obligations to provide the Secured Lender with the requested financial information

or access to its books and records.

8.      DFI's lack of transparency is significant:  the Secured Lender has reason to

believe that the Debtors have improperly moved or used $11.2 million in proceeds from the

Debtors' sale of condominium units, which were governed by the Credit Agreement.  Because

the Secured Lender has been denied access to any recent financial information or the Debtors'

books and records, the Secured Lender is unable to determine whether the Debtors have made

any other improper payments or transfers.

**D.      DFI'S DEFAULT ON THE LOANS**

9.      DFI was required to pay interest on the Loans, in the amount of $3,421,328.11, on

July 28, 2015 (the "Missed Interest Payment").  DFI failed to make the Missed Interest Payment

on the date due, and entered a five business day grace period (the "Cure Period") for paying the

Missed Interest Payment.  The Cure Period was set to expire on August 4, 2015.  On August 3,

2015, one day prior to the expiration of the Cure Period, the Secured Lender and DFI agreed

(i) to toll all obligations of the various parties under the Credit Agreement; (ii) to refrain from

taking any further actions or sending any further notices in connection therewith through August

54545007_1

17, 2015 (the "Tolling Period"); and (iii) upon the expiration of the Tolling Period, all restrictions on the parties would end and the parties would be returned to the exact same position with respect to the Loans as they were and stood in as of August 3, 2015. Pursuant to subsequent agreements, the Secured Lender and DFI agreed to extend the Tolling Period to October 26, 2015 (the "Extended Tolling Period").

10.    The Extended Tolling Period expired on October 26, 2015. Following the expiration of the Extended Tolling Period, the Cure Period for paying the Missed Interest Payment expired on October 27, 2015, and ripened into an Event of Default. On October 27, 2015, the Secured Lender declared an Event of Default and accelerated all obligations under the Credit Agreement. The unpaid amount of all outstanding Loans, including interest accrued and unpaid, is currently more than $101 million.

### E.    STATE COURT LITIGATION AND BANKRUPTCY FILINGS

11.    On October 27, 2015, the Secured Lender filed an action in the New York Supreme Court against the Debtors for breach of the Credit Agreement. In addition, on October 28, 2015, the Secured Lender exercised its remedies against the Collateral, terminated the Debtors' access to the Deposit Account, and began UCC foreclosure proceedings by sending out a notice of public disposition of the Collateral (the "UCC Sale"). In connection with the UCC Sale, the Secured Lender retained an auctioneer and advertised the UCC Sale four times in the *El Vocero*, the *New York Times*, and the *Wall Street Journal*. After the UCC Sale was advertised, five interested parties contacted counsel to the Secured Lender and requested additional information. Four of the five parties signed non-disclosure agreements, and received a diligence package containing the loan documents and information in the Secured Lender's possession regarding the Collateral.

54545007_1

12.    On November 9, 2015, DFI filed a motion for a temporary restraining order (the "TRO") and preliminary injunction to block the UCC Sale in the New York Supreme Court. Among other things, DFI argued that it was excused from repaying the $101 million in outstanding Loans under the Credit Agreement because the Credit Agreement was "integrated" with two separate agreements between DFI and Doral, Doral allegedly failed to honor its obligations under such agreements, and the FDIC subsequently repudiated such agreements.  On November 10, 2015, the New York Supreme Court granted the TRO and set a hearing on the preliminary injunction for December 22, 2015.  The New York Supreme Court also authorized the Secured Lender to reschedule the UCC Sale for December 28, 2015, in the event that it denied the preliminary injunction.

13.    On December 22, 2015, following extensive briefing and oral argument, the New York Supreme Court denied the preliminary injunction, ruling from the bench that DFI had failed to show likelihood of success on the merits, irreparable harm, or that the equities favored DFI.[6]  The state trial court rejected DFI's argument that Doral's alleged breaches of the other separate agreements, and the FDIC's subsequent repudiation of those agreements, excused DFI's obligations to the Secured Lender under the Credit Agreement.  Notably, while raising purported defenses based on the alleged "integration" of the Credit Agreement with two other contracts with Doral Bank, at no time during the state court proceedings did the Debtors contest that the Credit Agreement was secured or the perfection of the Secured Lender's security interests in the Collateral.

14.    Following the state trial court's denial of a preliminary injunction, the Debtors pursued an emergency appeal, and moved in the Appellate Division of New York Supreme Court

---

[6]    Attached as Exhibit F hereto is a copy of the New York Supreme Court's written order.

54545007_1

for a TRO and preliminary injunction to block the UCC Sale.  On December 24, 2015, after

lengthy oral argument, a justice of the Appellate Division denied the TRO request and held that

the UCC Sale could proceed as scheduled on December 28, 2015.  The Debtors filed these

chapter 11 cases shortly thereafter.

15.     The voluntary petitions filed by the Debtors with this Court – as to which the

president of each Debtor attested under the penalty of perjury – misrepresent the nature of the

Secured Lender's claims.  Although the Secured Lender holds valid, perfected security interests

in the Collateral and the Debtors' past audited financials describe the Secured Lender's claims as

secured, the voluntary petitions fail to include the Secured Lender's claims on the schedule of

secured claims.  Instead, the Debtors allege that they have *no* secured claims and list the Secured

Lender's claims as general unsecured, non-priority claims.  The Debtors have not filed a motion

for authorization to use cash collateral as required by section 363 of the Bankruptcy Code.

## RELIEF REQUESTED

16.     By this Motion, the Secured Lender seeks an order (i) prohibiting the Debtors' use

of cash collateral until the Debtors provide adequate protection against the diminution in value of

the Secured Lender's cash collateral in accordance with sections 361 and 363 of the Bankruptcy

Code, including segregation and an accounting of cash collateral as required by 11 U.S.C. §

363(c)(3) and compliance with a detailed 13-week cash flow budget, and (ii) conditioning the

Debtors' continued use of cash collateral on such adequate protection.

## BASIS FOR RELIEF

17.     In order to use cash collateral, a debtor must either obtain the secured creditor's

consent or authorization from the bankruptcy court upon a showing that the secured creditor's

interest is adequately protected.  11 U.S.C. § 363(c)(2) & (e).  Specifically, section 363(e) of the

54545007_1

Bankruptcy Code provides that:

> Notwithstanding any other provision of this section, at any time, on request of an entity that has an interest in property used, sold, or leased, or proposed to be used, sold, or leased, by the trustee, the court, with or without a hearing, shall prohibit or condition such use, sale, or lease as is necessary to provide adequate protection of such interest.

11 U.S.C. § 363(e). In addition, a debtor must "segregate and account for any cash collateral in [its] possession, custody, or control." 11 U.S.C. § 363(c)(3).

18.     "The burden of proof is on the debtor to demonstrate that the creditor is adequately protected for purposes of using its cash collateral." In re Builders Grp. & Dev. Corp., 502 B.R. 95, 123 (Bankr. D.P.R. 2013) (denying use of cash collateral where the debtor failed to satisfy its burden to prove that the secured creditor was adequately protected). The Bankruptcy Code does not define "adequate protection." However, adequate protection "should as nearly as possible under the circumstances of the case provide the creditor with the value of his bargained for rights." Resolution Trust Corp. v. Swedeland Dev. Grp., Inc. (In re Swedeland Dev. Grp., Inc.), 16 F.3d 552, 564 (3rd Cir. 1994) (internal quotations and citations omitted). Section 361 of the Bankruptcy Code contains a non-exhaustive list of forms of adequate protection, including cash payments, additional liens, replacement liens, and the "indubitable equivalent of such entity's interest in such property." 11 U.S.C. § 361.

19.     The Debtors have failed to move for authorization to use the Secured Lender's cash collateral and have misrepresented to this Court that the Secured Lender's claims are unsecured. Specifically, the Debtors have filed sworn statements with this Court that contradict statements in their past audited financials and that are inconsistent with the New York state court rulings in the litigation that resulted in the filing of the Debtors' chapter 11 cases. The Debtors' misrepresentations, combined with their past refusal to comply with their contractual obligations

54545007_1

to provide financial information and access to their books and records, raise significant concerns that the Debtors are dissipating the Secured Lender's cash collateral without authorization from this Court and in violation of the Bankruptcy Code.

20.     Accordingly, the Secured Lender respectfully requests that this Court prohibit the Debtors' use of cash collateral until the Debtors provide adequate protection in accordance with the Proposed Order and condition the Debtors' use of cash collateral on such adequate protection, including segregation and accounting for cash collateral and compliance with a detailed 13-week cash flow budget.

NOTICE

21.     The Secured Lender has provided notice of this Motion by serving a copy of it upon (a) the Office of the United States Trustee for Region 1, Ochoa Building, 500 Tanca Street, Suite 301, San Juan, Puerto Rico 00901; (b) Charles Alfred Cuprill, P.S.C., Law Offices, counsel to the Debtor, 356 Fortaleza Street, Second Floor, San Juan, PR 00901; and (c) those parties who have formally filed requests for notice in this chapter 11 case pursuant to Bankruptcy Rule 2002. The Secured Lender requests that the Court find such notice of this Motion to be good and sufficient under the circumstances.

**WHEREFORE,** the Secured Lender respectfully requests that this Court enter the Proposed Order, substantially in the form attached hereto, granting the relief requested herein and such other and further relief as is just and proper.

54545007_1

San Juan, Puerto Rico, December 28, 2015.

/s/Antonio A. Arias-Larcada
Antonio A. Arias-Larcada
USDC-P.R. No. 204906
McConnell Valdés LLC
270 Muñoz Rivera Avenue
Hato Rey, PR 00918
Telephone: (787) 250-5604
Facsimile: (787) 759-2771
E-Mail: aaa@mcvpr.com

/s/Lina M. Soler/Rosario
Lina M. Soler-Rosario
USDC-P.R. No. 227304
McConnell Valdés LLC
270 Muñoz Rivera Avenue
Hato Rey, PR 00918
Telephone: (787) 250-5812
Facsimile: (787) 759-2737
E-Mail: lms@mcvpr.com

-and-

James M. Wilton, Esq. (*pro hac vice pending*)
Patricia I. Chen (*pro hac vice pending*)
Martha E. Martir (*pro hac vice pending*)
ROPES & GRAY LLP
800 Boylston Street
Boston, Massachusetts 02199-3600
Telephone:     (617) 951-7000
Facsimile:     (617) 951-7050
E-mail:        james.wilton@ropesgray.com
               patricia.chen@ropesgray.com
               martha.martir@ropesgray.com

*Co-Counsel for Secured Lender*

54545007_1